Hillsborough
No. 82-070

# THE STATE OF NEW HAMPSHIRE

v.

# LOUIS PHILIBOTTE

March 31, 1983

*Gregory H. Smith,* attorney general (*James D. Cahill, III,* attorney, on the brief and orally), for the State.

*James E. Duggan,* appellate defender, of Concord, by brief and orally, for the defendant.

BOIS, J. The defendant, Louis Philibotte, was tried and convicted by a jury in Superior Court (*Flynn,* J.) of two counts of selling cocaine to an undercover police officer. *See* RSA 318-B:26, I(a) (Supp. 1981). He seeks reversal of his conviction on two grounds: (1) that the trial court should have suppressed the officer's in-court identification of him; and (2) that the delay between the date of the alleged offense and the indictment denied him the right to a fair trial. We affirm his conviction.

In early 1981, the New Hampshire State Police conducted a nar-

cotics investigation in the Manchester area. On January 22, 1981, as part of the investigation, Trooper Gary Bashaw, who was an undercover officer with experience and training in narcotics work, purchased three packets of cocaine at a Manchester bar from a person identifying himself as "Louie." Shortly after consummating the deal, Bashaw made written notes about the transaction and the seller. In his notes, he described the seller as 5'4" tall, 130 pounds in weight, and having brown hair and blue eyes. After conferring with Manchester police officers, who suggested that the seller might have been "Louie Mardonas," Trooper Bashaw filed a preliminary report which incorporated his initial description of the seller and further identified him as "Louie Mardonas."

On January 29, 1981, Bashaw met with the same individual in the same bar and again purchased three packets of cocaine. At this meeting, the seller introduced the trooper to his associate, Armand Letendre. Bashaw compiled additional notes concerning these events.

Following his second encounter with "Louie," Trooper Bashaw made approximately fifty drug purchases from other individuals as part of the ongoing narcotics investigation. In April 1981, he met with officials from the Manchester Police Department to discuss the drug transactions. When he described "Louie's" physical characteristics and identified him as an associate of Armand Letendre, the Manchester police suggested that "Louie" might have been the defendant, Louis Philibotte. Bashaw was shown a photograph of Philibotte, whom he positively identified as the seller in the above transactions.

On October 2, 1981, the defendant was indicted in connection with the two sales of cocaine to Trooper Bashaw. Prior to trial, the defendant moved to dismiss the indictment, claiming that the nine-month delay between the alleged offense and his indictment denied him a fair trial and violated his right to due process. The trial court denied the motion.

At the pretrial hearing, the defendant also moved to suppress Trooper Bashaw's out-of-court and proposed in-court identifications of him. The trial court found that the April photographic identification at the Manchester Police Department was impermissibly suggestive and excluded it. The court, however, found that independent grounds existed for an in-court identification and therefore refused to suppress the proposed identification. Based on the trooper's testimony and in-court identification, the jury convicted the defendant, and he appealed to this court.

■■ After the suppression of an impermissibly suggestive out-

of-court identification, the State must prove by clear and convincing evidence that a subsequent in-court identification has an independent source and is not influenced by the out-of-court viewing. *State v. Preston*, 122 N.H. 153, 157–58, 442 A.2d 992, 994–95 (1982); *State v. Leclair*, 118 N.H. 214, 221, 385 A.2d 831, 835 (1978); *see United States v. Wade*, 388 U.S. 218, 241 (1967). In determining whether independent origins exist for an in-court identification, the trial court should consider the opportunity of the witness to observe the defendant, the existence of any discrepancy between the initial description and the defendant's actual appearance, the witness' misidentification of the defendant or failure to identify him on a prior occasion, and the time between the alleged crime and the identification. *State v. Preston*, 122 N.H. at 158, 442 A.2d at 995; *see United States v. Crews*, 445 U.S. 463, 473 n.18 (1980); *United States v. Wade*, 388 U.S. at 241.

We find that the trial court in this case properly considered the above factors and correctly found that an independent source existed for the in-court identification of the defendant. A review of the record indicates that the transactions occurred in a lighted bar and lasted a total of ten to twenty minutes. As a trained narcotics officer, Trooper Bashaw knew that his identification of the seller would be significant in a subsequent prosecution. Thus, unlike a crime victim faced with extreme and unexpected stress, Bashaw was cognizant of the importance of observing the defendant carefully. He specifically noted the defendant's height, weight, and hair and eye color, as well as his association with Armand Letendre. This description, which was committed to writing shortly after the transactions, remained essentially unchanged throughout the proceedings and was found to describe the defendant accurately. Although the trooper's preliminary report identified the seller by the surname "Mardonas," this fact was not overly significant because the record indicates that no photographic or in-person identification had taken place at that time, and the inclusion of the surname "Mardonas" was based merely on the conjectures of other police officers. Finally, we note that Bashaw immediately and positively identified the defendant at trial.

For all the foregoing reasons, we conclude that the trial court properly allowed the in-court identification despite the twelve-month time lapse following the offenses.

The defendant next contends that the nine-month delay between the alleged offense and his indictment resulted in the denial of his right to a fair trial. He specifically claims that he was prejudiced because, unlike Trooper Bashaw, who testified from his notes, the

defendant did not have any notes and was unable to remember his whereabouts or actions at the time of the alleged offenses.

■■ We have held that the right to a speedy trial attaches at the time of arrest or indictment rather than at the time of the offense, *State v. Perron*, 122 N.H. 941, 950, 454 A.2d 422, 427 (1982); *see also United States v. Marion*, 404 U.S. 307, 320–21 (1971). Nevertheless, we recognize that an arbitrary delay between the time of an offense and the arrest or indictment of a defendant may result in a denial of due process. *See id.* at 324.

■ The United States Supreme Court has directed that any pre-indictment delay be evaluated in terms of the actual prejudice to the defendant and the reasons for the delay. *See United States v. Lovasco*, 431 U.S. 783, 790 (1977); *see also United States v. Marion*, 404 U.S. at 324. The Supreme Court has recognized that the statutes of limitations provide the primary safeguard against the initiation of overly stale criminal charges. *Id.* at 322–23. Because it can be presumed that timely prosecution has commenced if charges are brought within the applicable statute of limitations, *id.* at 322, the defendant must initially show that actual prejudice has resulted from a delay. *United States v. Lieberman*, 608 F.2d 889, 902 (1st Cir. 1979), *cert. denied*, 444 U.S. 1019 (1980); *see United States v. Lovasco*, 431 U.S. at 789. Once such a showing has been made, the trial court must then balance the resulting prejudice against the reasonableness of the delay. *Id.* at 790.

■■ In this case, the defendant's sole claim of prejudice was his purported inability to remember his whereabouts at the time of the alleged offenses. It is generally established, however, that the possibility of prejudice due to the dimming of memories is inherent in any delay and, alone, is insufficient to constitute a denial of due process. *United States v. Marion*, 404 U.S. at 325–26; *cf. State v. Little*, 121 N.H. 765, 773, 435 A.2d 517, 522 (1981) (dimming of memories does not prejudice defendant in speedy trial context.) In addition, the evidence at trial indicated that in the period following Bashaw's transactions at the Manchester bar, the federal government was conducting another undercover investigation at the same bar. Disclosure of the presence of undercover State troopers at the bar might have jeopardized the federal investigation. Thus the delay in the indictment of the defendant was not unreasonable, and the trial court properly found that the indictments did not violate the defendant's right to a fair trial.

*Affirmed.*

All concurred.