ROBINSON, J., concurring in part and dissenting in part.
 

 ¶ 43. I concur in the result, but write separately to advocate a different test under the Vermont Constitution for evaluating claims of undue precharge or preindictment delay.
 

 ¶ 44. In my view, the primary Vermont case relied upon by the majority does not support the majority's conclusion, and actually offers compelling reasons to reject it. The better test is that adopted by the New Hampshire Supreme Court in
 
 State v. Knickerbocker
 
 ,
 
 152 N.H. 467
 
 ,
 
 880 A.2d 419
 
 (2005).
 

 ¶ 45. I part ways with the majority's suggestion that this Court's decision in
 
 State v. Delisle
 
 ,
 
 162 Vt. 293
 
 ,
 
 648 A.2d 632
 
 (1994), presages the majority's holding today, and believe that the
 
 Delisle
 
 decision supports a different approach. In
 
 Delisle
 
 , the Court considered an appeal of a second-degree murder conviction. Nearly fourteen years had passed between the homicide and the indictment. During that time, the State failed to preserve a tarp in which the victim's body was wrapped when it was discovered as well as a fractured hyoid bone. On appeal, the Court addressed defendant's argument that the loss of evidence violated his rights under the U.S. and Vermont Constitutions. The Court recognized that the federal standard for addressing this claim was established
 by the case of
 
 Arizona v. Youngblood
 
 ,
 
 488 U.S. 51
 
 ,
 
 109 S.Ct. 333
 
 ,
 
 102 L.Ed.2d 281
 
 (1988).
 
 Delisle
 
 ,
 
 162 Vt. at 309
 
 ,
 
 648 A.2d at
 
 642
 
 .
 
 Pursuant to this federal standard, " 'unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of the due process of law.' "
 

 Id.
 

 (quoting
 
 Youngblood
 
 ,
 
 488 U.S. at 58
 
 ,
 
 109 S.Ct. 333
 
 ). However, the Court recognized that "[d]isposition of defendant's federal constitutional claim does not necessarily resolve [the] state constitutional claim."
 

 Id.
 

 The Court opined that the federal standard is too narrow because "it limits due process violations to only those cases in which a defendant can demonstrate bad faith" even though "the negligent loss of evidence may critically prejudice a defendant."
 
 Id.
 
 at 310,
 
 648 A.2d at 643
 
 .
 

 ¶ 46. The Court endorsed a separate standard for evaluating lost evidence claims under the Vermont Constitution, originating in the Court's pre-
 
 Youngblood
 
 decision in
 
 State v. Bailey
 
 ,
 
 144 Vt. 86
 
 , 92,
 
 475 A.2d 1045
 
 , 1049 (1984). Pursuant to the
 
 Bailey
 
 test, if the defendant shows a reasonable possibility that the lost evidence would be exculpatory, the court engages in a " 'pragmatic balancing of three factors: (1) the degree of negligence or bad faith on the part of the government; (2) the importance of the evidence lost; and (3) other evidence of guilt adduced at trial.' "
 
 Delisle
 
 ,
 
 162 Vt. at 310
 
 ,
 
 648 A.2d at 642-43
 
 (quoting
 
 Bailey
 
 ,
 
 144 Vt. at 95
 
 ,
 
 475 A.2d at
 
 1050 ). The
 
 Delisle
 
 Court acknowledged that the second and third factors both relate to the prejudice caused by the loss of evidence.
 
 Id.
 
 at 310,
 
 648 A.2d at 1049
 
 . After applying the
 
 Bailey
 
 test in the
 
 Delisle
 
 case, the Court concluded that the lost evidence did not result in a denial of the defendant's right under the Vermont Constitution to call for evidence in his favor. The Court noted that there was no proof of bad faith, but its analysis turned primarily on the absence of unfair prejudice.
 

 ¶ 47. After its discussion of the lost evidence issue, the Court turned to the defendant's challenge based on the State's preindictment delay. The Court cited the U.S. Supreme Court's guidance that due process prevents prosecution where a delay "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency."
 

 Id.
 

 at 312
 
 ,
 
 648 A.2d at 644
 
 (quotations omitted). Then it explained, "[i]n making this inquiry, courts should consider the reasons for the delay and the actual prejudice to the defendant."
 

 Id.
 

 ¶ 48. Noting first that the defendant did not contest the State's explanation that the delay was an investigatory one resulting from a lack of evidence, the Court considered and rejected each of the defendant's claims of actual prejudice. In its conclusion, the Court noted that prosecuting a defendant following an investigative delay does not deprive the defendant of due process even if the defense may have been somewhat prejudiced by the lapse of time, and emphasized that the defendant had failed to show any actual prejudice.
 

 Id.
 

 at 313
 
 ,
 
 648 A.2d at 644
 
 .
 

 ¶ 49.
 
 Delisle
 
 offers no support for the majority's position, and actually offers support for a contrary view. Nothing in the Court's analysis in
 
 Delisle
 
 suggests a view that preindictment delay runs afoul of due process only if it results from the State's bad faith or impermissible motives.
 
 Delisle
 
 considered both the reason for the delay and the degree of prejudice-both factors to be considered under any potential test. But the Court said nothing to suggest that a claim based on prosecutorial negligence could not make out a due process violation under the Vermont Constitution. In fact,
 the Court acknowledged at the outset of its analysis that the defendant did not even challenge the State's innocent explanation for the delay. Yet it went on to evaluate the prejudice claimed by the defendant. Had the Court endorsed the view now embraced by the majority, it would not have undertaken that second step. Moreover, the
 
 Delisle
 
 Court recognized that the negligent loss of evidence may critically prejudice a defendant every bit as much as a bad faith loss of evidence.
 

 Id.
 

 at 310
 
 ,
 
 648 A.2d at 643
 
 .
 

 ¶ 50. The
 
 Delisle
 
 Court's recognition that the constitutionally cognizable consequences of lost evidence may depend on more than just the purity of the State's motivations makes sense. If we were barring an untimely prosecution solely as a sanction for prosecutorial misconduct, or in order to deter future misconduct, the singular focus on the permissibility of the State's purposes would be justified. But the core question for due process purposes is whether a delay violates "fundamental conceptions of justice" and "the community's sense of fair play."
 

 Id.
 

 at 312
 
 ,
 
 648 A.2d at 644
 
 (citations omitted). Although it may be an unusual case, there are likely circumstances in which a negligent and extraordinary delay that causes extreme prejudice violates those fundamental conceptions of justice and fair play. The majority's more sweeping approach denies that possibility.
 

 ¶ 51. For these reasons, I would evaluate the defendant's claim pursuant to the standard set forth in
 
 Knickerbocker
 
 . In that case, the New Hampshire Supreme Court considered an indictment for second-degree murder of an infant that had occurred twenty years prior. On appeal from the trial court's dismissal of the indictment, the New Hampshire Supreme Court considered whether a defendant making a due process claim on the basis of excessive preindictment delay must prove under the New Hampshire Constitution that the State's delay resulted from a deliberate device to gain an advantage.
 
 Knickerbocker
 
 ,
 
 880 A.2d at 421-22
 
 . The court first explored the split in federal appeals court decisions evaluating due process claims under the U.S. Constitution, acknowledging that a majority of the federal circuits require a showing of prosecutorial misconduct or some other impermissible purpose in order to establish a due process violation.
 

 Id.
 

 at 422
 
 . However, the court concluded that this majority view was not compelled by the U.S. Supreme Court decision on which it purported to rest, and that the unsettled federal precedent did not provide a sound basis for reexamining the State's own constitutional test.
 

 Id.
 

 at 422-23
 
 . Instead, considering a state constitutional provision almost identical to Ch. I, Article 4 of the Vermont Constitution,
 
 [4]
 
 the court reaffirmed the following test for preindictment delay: "The defendant must initially show that actual prejudice has resulted
 from a delay. Once such a showing has been made, the trial court must then balance the resulting prejudice against the reasonableness of the delay."
 

 Id.
 

 at 423
 
 (quotation omitted).
 

 ¶ 52. The
 
 Knickerbocker
 
 court emphasized that the bar for establishing actual prejudice is a high one. The defendant must show "actual prejudice that is definite and not speculative."
 

 Id.
 

 (quotation omitted). A showing of
 
 possible
 
 trial prejudice is not enough, and the prejudice must be substantial.
 

 Id.
 

 "[T]he possibility of prejudice due to the dimming of memories is inherent in any delay and, alone, is insufficient to constitute a denial of due process."
 

 Id.
 

 (quotation omitted). And when the claimed prejudice arises from the unavailability of a witness, the defendant must demonstrate with specificity the expected content of the testimony, that the information the witness would have provided was not available from other sources, and that the defendant made serious attempts to find the witness.
 

 Id.
 

 The court noted that a dismissal on the basis of undue delay prior to trial will rarely be appropriate since an assessment of actual substantial trial prejudice can be more accurately made after the trial.
 

 Id.
 

 at 424
 
 . In
 
 Knickerbocker
 
 , the court applied this stringent approach, reversing the trial court's various findings of prejudice and concluding that the defendant had failed to establish actual prejudice due to his delayed indictment.
 

 ¶ 53. In contrast to the majority's approach, the
 
 Knickerbocker
 
 test focuses the inquiry first and foremost on the subject of greatest constitutional concern: the prejudice to the defendant as a result of the State's action (or inaction). In the absence of actual and substantial prejudice, a defendant has no grounds to complain of a delayed prosecution within the applicable statute of limitations. But if the defendant makes the difficult showing of actual, nonspeculative, and substantial prejudice as a result of inordinate delay, then this approach contemplates that negligent delays-as opposed to perfectly reasonable investigative delays-could in some cases cause so much harm to an accused as to violate fundamental notions of fairness.
 

 ¶ 54. That is not the case here. Applying the stringent
 
 Knickerbocker
 
 test, I would reach the same result as the majority-not because the defendant failed to show an impermissible prosecutorial purpose, but because he failed to show substantial actual prejudice.
 

 Part 1, Article 14 of the New Hampshire Constitution reads:
 

 Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws.
 

 Chapter I, Article 4 of the Vermont Constitution states:
 

 Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which one may receive in person, property or character; every person ought to obtain right and justice, freely, and without being obliged to purchase it; completely and without any denial; promptly and without delay; comformably to the laws.