******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

ALEXANDER, J., with whom MULLINS, C. J., and DANNEHY, J., join, concurring. I concur in the opinion of the court affirming the conviction of the defendant, Willie McFarland, of two counts of murder in violation of General Statues § 53a-54a (a) in connection with his commission of a double homicide in 1987. I write separately with respect to the prearrest delay issue addressed in part I of the court's opinion, which considers whether the thirty-two year interval between the murders and the defendant's arrest violated his due process rights under, among other provisions, article first, §§ 8 and 9, of the Connecticut constitution. In analyzing such prearrest delay claims under our state constitution, I reject the interpretation of the United States Supreme Court's decisions in *United States* v. *Lovasco*, 431 U.S. 783, 795–96, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977), and *United States* v. *Marion*, 404 U.S. 307, 324, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971), followed by a majority of the United States courts of appeals and other states. See, e.g., *United States* v. *Crouch*, 84 F.3d 1497, 1511–12 (5th Cir. 1996) (citing cases), cert. denied, 519 U.S. 1076, 117 S. Ct. 736, 136 L. Ed. 2d 676 (1997), and cert. denied sub nom. *Frye* v. *United States*, 519 U.S. 1076, 117 S. Ct. 736, 136 L. Ed. 2d 676 (1997). Those jurisdictions have adopted a two-pronged test that requires "the defendant [to] show both that actual substantial prejudice resulted from the delay *and* that the reasons for the delay were wholly unjustifiable, as [when] the state seeks to gain a tactical advantage over the defendant." (Emphasis in original; internal quotation marks omitted.) *State* v. *Roger B.*, 297 Conn. 607, 614, 999 A.2d 752 (2010).

Instead, like Justice Ecker, I would address due process challenges to prearrest delay brought under the Connecticut constitution through a balancing test that is consistent with the minority view followed by the United States Courts of Appeals for the Fourth, Seventh

and Ninth Circuits. See, e.g., *United States* v. *Sowa*, 34 F.3d 447, 451 (7th Cir. 1994), cert. denied, 513 U.S. 1117, 115 S. Ct. 915, 130 L. Ed. 2d 796 (1995); *Howell* v. *Barker*, 904 F.2d 889, 895 (4th Cir.), cert. denied, 498 U.S. 1016, 111 S. Ct. 590, 112 L. Ed. 2d 595 (1990); *United States* v. *Moran*, 759 F.2d 777, 782–83 (9th Cir. 1985), cert. denied, 474 U.S. 1102, 106 S. Ct. 885, 88 L. Ed. 2d 920 (1986). Under this balancing test, the defendant must first establish actual and substantial prejudice, after which the burden shifts to the state to produce evidence of the reasons for the delay. See, e.g., *United States* v. *Sowa*, supra, 451. "[T]he court must [then] balance the defendant's prejudice against the government's justification for delay. . . . The basic inquiry then becomes whether the government's action in prosecuting after substantial delay violates fundamental conceptions of justice or the community's sense of fair play and decency." (Citation omitted; internal quotation marks omitted.) *Howell* v. *Barker*, supra, 895. In my view, this allocation of the burden of proof is more equitable than that under the two-pronged test because it better reflects the evidence available to the defendant and the state. Assuming without deciding that the defendant has established actual and substantial prejudice in this case, I conclude that any prejudice was far outweighed by the legitimate investigative justifications for the delay. Accordingly, I conclude that the thirty-two year interval between the murders and the defendant's arrest did not violate his due process rights under the Connecticut constitution.

My rejection of the two-pronged test in favor of a balancing test under our state constitution is driven primarily by an analysis of three interrelated factors set forth in *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992).[1] I find most persuasive case law from

---

[1] In *Geisler*, "we enumerated the following six factors to be considered in construing the state constitution: (1) persuasive relevant federal precedents; (2) the text of the operative constitutional provisions; (3) historical insights into the intent of our constitutional forebears; (4) related Connecticut precedents; (5) persuasive precedents of other state courts; and (6)

Connecticut, precedents of other state courts, and public policy considerations, and concentrate my analysis on them. See, e.g., *State* v. *Jose A. B.*, 342 Conn. 489, 508, 270 A.3d 656 (2022) (court may focus on most persuasive *Geisler* factors).

First, a prior decision of this court strongly supports the conclusion that a balancing test is required to address prearrest delays, namely, this court's interpretation of article first, § 7, of the Connecticut constitution in *State* v. *Hodge*, 153 Conn. 564, 567, 219 A.2d 367 (1966).[2] Although the claim in *Hodge* was framed as a challenge to the reasonableness of the seizure of the defendant—who had been arrested on narcotics charges three weeks after the commission of the crimes—rather than a due process claim, this court's analysis remains

contemporary understandings of applicable economic and sociological norms, or as otherwise described, relevant public policies. . . .

"The *Geisler* factors serve a dual purpose: they encourage the raising of state constitutional issues in a manner to which the opposing party . . . can respond; and they encourage a principled development of our state constitutional jurisprudence. Although in *Geisler* we compartmentalized the factors that should be considered in order to stress that a systematic analysis is required, we recognize that they may be inextricably interwoven. . . . [N]ot every *Geisler* factor is relevant in all cases. . . . Moreover, a proper *Geisler* analysis does not require us simply to tally and follow the decisions favoring one party's state constitutional claim; a deeper review of those decisions' underpinnings is required because we follow only persuasive decisions." (Internal quotation marks omitted.) *In re Ivory W.*, 342 Conn. 692, 719–20, 271 A.3d 633 (2022).

[2] *Hodge* was decided well before *Geisler*, which articulated this court's now well established approach to state constitutional interpretation. See *State* v. *Geisler*, supra, 222 Conn. 684–86. Although pre-*Geisler* decisions may have great precedential significance; see, e.g., *State* v. *Marsala*, 216 Conn. 150, 159–61, 579 A.2d 58 (1990); *State* v. *Stoddard*, 206 Conn. 157, 164, 537 A.2d 446 (1988); I recognize that we have conducted a somewhat more searching review under *Geisler* when presented with a state constitutional issue that has been previously mentioned only in passing or without the benefit of a comprehensive, independent analysis. See, e.g., *State* v. *Patel*, 327 Conn. 932, 939–40, 171 A.3d 1037 (2017); see also *State* v. *Haynes*, 352 Conn. 236, 244–45, 336 A.3d 1139 (2025) (describing relationship between *Geisler* factors and doctrine of stare decisis with respect to pre-*Geisler* state constitutional decisions).

instructive. See id., 566–67. Indeed, in *Hodge*, this court cited federal due process decisions, including *United States* v. *Holiday*, 319 F.2d 775, 776 (2d Cir. 1963), and *Ross* v. *United States*, 349 F.2d 210, 213 (D.C. Cir. 1965), in concluding that, "[when] the delay in arresting a defendant (or in otherwise apprising him of the charges against him) continues long after all the evidence has been assembled, and becomes a product of mere convenience to the state, a question of an unreasonable seizure or lack of a fair trial may arise." *State* v. *Hodge*, supra, 567–68. This court held that "[t]he defendant's rights . . . must necessarily depend on all the circumstances, including the length of the delay, the reason for the delay, prejudice to the defendant, and a timely presentation of the claim to the trial court." Id., 568. We indicated that a defendant must show "[s]ome prejudice" to his defense, such as "the unavailability of alibi witnesses or the impaired memory of the defendant and others who vouch for his innocence." Id. Ultimately, we applied a balancing test to reject this claim because the delay was "hardly . . . unreasonable" and resulted from the exigencies of the narcotics investigation, including protecting the identity of an undercover detective, and the defendant had not demonstrated any prejudice because "[h]is alibi witnesses displayed particularly acute memories in recreating the events of the evening in question." Id., 568–69.

Second, I find persuasive the decisions of other state courts that have rejected the rigid, two-pronged test in favor of a balancing test. This *Geisler* factor "calls for a more rigorous analysis than simply tallying holdings . . . [and] requires us to determine which . . . state courts' approaches provide a genuinely persuasive framework for resolving this state constitutional question." *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 427, 119 A.3d 462 (2015). The state courts that adhere to the two-pronged test do not provide

much in the way of justification for doing so, other than conclusorily articulating agreement with it as the correct reading of *Marion* and *Lovasco*, particularly when that approach governs in the applicable federal court of appeals. See, e.g., *Jackson* v. *State*, 279 Ga. 449, 450–51, 614 S.E.2d 781 (2005). But see *Jackson* v. *State*, 347 So. 3d 292, 304–305 (Fla. 2022) (providing detailed analysis for following *United States* v. *Crouch*, supra, 84 F.3d 1497, and adopting two-pronged test as matter of federal constitutional law, including claimed difficulty in mathematical application of balancing test). State courts rejecting the two-pronged test in favor of a balancing test under their respective state constitutions, however, have generally grounded that choice in pragmatism and fairness concerns.[3] See, e.g., *People* v. *Nelson*, 43 Cal. 4th 1242, 1254–55, 185 P.3d 49, 78 Cal. Rptr. 3d 69, cert. denied, 555 U.S. 926, 129 S. Ct. 357, 172 L. Ed. 2d 219 (2008); *State* v. *Keliiheleua*, 105 Haw. 174, 179 and n.5, 95 P.3d 605 (2004); *State* v. *Malvo*, 357 So. 2d 1084, 1086–87 (La. 1978); *State* v. *Cyr*, 588 A.2d 753, 756 (Me. 1991); *State* v. *Passmore*, 355 Mont. 187, 198–99 and n.5, 225 P.3d 1229 (2010); *State* v. *Knicker-bocker*, 152 N.H. 467, 469–70, 880 A.2d 419 (2005); *State* v. *Luck*, 15 Ohio St. 3d 150, 153–54, 472 N.E.2d 1097 (1984), cert. denied, 470 U.S. 1084, 105 S. Ct. 1845, 85 L. Ed. 2d 144 (1985); *State ex rel. Knotts* v. *Facemire*, 223 W. Va. 594, 603–604, 678 S.E.2d 847 (2009); see also *People* v. *Regan*, 39 N.Y.3d 459, 464–66, 212 N.E.3d 282, 191 N.Y.S.3d 265 (2023) (greater due process protection was afforded under New York constitution by treating preindictment and speedy trial claims similarly, with

---

[3] Several other state courts have adopted the balancing test in considering claims brought solely under the federal constitution. See, e.g., *People* v. *Lawson*, 67 Ill. 2d 449, 458–59, 367 N.E.2d 1244 (1977); *Fritz* v. *State*, 811 P.2d 1353, 1366–67 (Okla. Crim. App. 1991); *State* v. *Stokes*, 350 Or. 44, 57, 64, 248 P.3d 953, cert. denied, 565 U.S. 920, 132 S. Ct. 343, 181 L. Ed. 2d 215 (2011); *State* v. *Brazell*, 325 S.C. 65, 72–73, 480 S.E.2d 64 (1997); *State* v. *Oppelt*, 172 Wn. 2d 285, 288–90, 257 P.3d 653 (2011).

multifactor balancing applied to preindictment delay claims).

When considering the proper allocation of the burden of proof, some state courts that utilize the balancing test point out that it is inequitable to require the defendant to prove the state's reasons for delay when that information is in the hands of the state. See, e.g., *State* v. *Lee*, 375 S.C. 394, 400, 653 S.E.2d 259 (2007) ("[r]equiring a higher burden of proof in proving improper motives on the part of the prosecution would put an almost impossible burden on defendants to maintain a . . . due process claim in [preindictment] delay cases"); *State ex rel. Knotts* v. *Facemire*, supra, 223 W. Va. 603 ("[o]nly by eliminating the burden imposed on a defendant to demonstrate that the [s]tate gained an advantage through preindictment delay, will the over-arching concern of fundamental fairness that undergirds the [d]ue [p]rocess [c]lause be furthered"); see also *Howell* v. *Barker*, supra, 904 F.2d 895 (noting "the difficulty defendants either have encountered or will encounter in attempting to prove improper prosecutorial motive"). This is consistent with Connecticut case law regarding the allocation of the burden of proof, which considers which party is more likely to have access to the facts in question. See, e.g., *State* v. *Swebilius*, 325 Conn. 793, 807–808, 159 A.3d 1099 (2017); *State* v. *Ray*, 290 Conn. 602, 610, 966 A.2d 148 (2009).

An additional pragmatic justification for the balancing test identified by these state courts is that delay by the state need not be intentional to cause prejudice. See, e.g., *People* v. *Nelson*, supra, 43 Cal. 4th 1255–56; *State ex rel. Knotts* v. *Facemire*, supra, 223 W. Va. 602–603; see also *Howell* v. *Barker*, supra, 904 F.2d 895. For example, in *State* v. *Luck*, supra, 15 Ohio St. 3d 150, the Ohio Supreme Court held that a fifteen year preindictment delay was unjustifiable because the state had decided to commence its prosecution of the defen-

dant "without one shred of new evidence—its case being substantially the same as it had been since 1968." Id., 158–59. In *Luck*, the state's delay was the result of an " 'error in judgment,' " which stopped the investigation for fifteen years. Id. During that time, witnesses died, memories faded, evidence was lost, and the state acquired no new evidence. Id., 159. Balancing the "actual prejudice" to the defendant against the lack of a justifiable reason for the delay in the commencement of prosecution, the court held that the delay violated "those fundamental conceptions of justice [that] lie at the base of our civil and political institutions . . . and [that] define the community's sense of fair play and decency." (Internal quotation marks omitted.) Id. Had the court in *Luck* instead adopted the strict two-pronged test, the defendant's valid due process claim would have failed, despite the unjustifiable delay, because there was no evidence that the delay was intentional or otherwise the product of bad faith.

Third, the public policy factor of the *Geisler* analysis also weighs heavily in favor of adopting a balancing test. I recognize that the statute of limitations is "the primary guarantee against bringing overly stale criminal charges. Such statutes represent legislative assessments of relative interests of the [s]tate and the defendant in administering and receiving justice . . . ." (Internal quotation marks omitted.) *United States* v. *Marion*, supra, 404 U.S. 322; see *State* v. *Littlejohn*, 199 Conn. 631, 646, 508 A.2d 1376 (1986) (recognizing relationship between due process protections and statute of limitations, which "ordinarily . . . is the only protection afforded a defendant against the institution of stale criminal charges"); *State* v. *Hodge*, supra, 153 Conn. 567 (statute of limitations is "ultimate safeguard against a [long delayed] arrest and prosecution"). There is, however, a growing number of crimes beyond murder for which there is either no limitation period; see

General Statutes § 54-193 (a); or a significantly extended limitation period, particularly for certain sex offenses. See General Statutes § 54-193 (b). This increase in the potential for prosecutions beyond the generally applicable limitation periods of five years for felony offenses and one year for most misdemeanor offenses; see General Statutes § 54-193 (c) and (d); highlights the need for a balancing test to determine whether a delay in prosecution has so prejudiced the defendant that it constitutes a due process violation. Given the extraordinarily high bar necessary for a defendant to prevail, both by having to establish actual and substantial prejudice, *and* by demonstrating that such prejudice outweighed the government's justification for delay, I am confident that the adoption of a balancing test does not override a legislative decision not to have a statute of limitations for certain crimes but, rather, simply ensures a defendant's right to a fair trial. It recognizes the state's obligation to investigate a crime thoroughly before filing criminal charges, particularly in the most serious cases, and reflects the deference given to the state to rely on a limitation period in conducting its investigation, notwithstanding the potential effects of a delayed arrest and prosecution, such as the loss of documentary evidence, the death or disappearance of witnesses, and the impairment of memory. See, e.g., *State* v. *A. B.*, 341 Conn. 47, 63–64, 266 A.3d 849 (2021); *State* v. *Hodge*, supra, 568 and n.3.

Before turning to the record in this case, I outline the proper application of the balancing test. The defendant bears the initial burden of producing evidence that the delay in the prosecution has caused his defense to suffer "actual and substantial prejudice . . . ." *United States* v. *Hagler*, 700 F.3d 1091, 1099 (7th Cir. 2012). Allocation of this initial burden to the defendant is appropriate given his familiarity with the various strategic options for his defense and the effect of the delay on, for exam-

ple, his ability to conduct effective cross-examination. Id., 1099–1100. "This burden is an exacting one; the showing must rest [on] more than mere speculative harm . . . and [the defendant] must present facts that are specific, concrete, and supported by evidence." (Citation omitted; internal quotation marks omitted.) Id., 1099. Indeed, the Seventh Circuit has described the defendant's burden as a "monumental hurdle . . . ." *United States* v. *Sowa*, supra, 34 F.3d 451.

Actual prejudice is that which is nonspeculative in nature, and substantial prejudice is that which "meaningfully [impairs the defendant's] ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely affected." *Jones* v. *Angelone*, 94 F.3d 900, 907 (4th Cir. 1996). Demonstrating actual and substantial prejudice requires the defendant to establish that the delay has largely deprived him of his ability to mount a defense through a specific showing of lost witnesses, or other evidence, whose information was not available from other sources. Id., 908; see, e.g., *United States* v. *Hagler*, supra, 700 F.3d 1099 ("the mere fact that memories have faded is not enough to establish excessive delay," particularly when defendant is able to highlight discrepancies during cross-examination); *United States* v. *Crouch*, supra, 84 F.3d 1515 ("mere loss of potential witnesses is insufficient [without] a showing that their testimony would have actually aided the defense" (internal quotation marks omitted)). The court considers how the lost evidence would have affected the defense. See, e.g., *United States* v. *McMutuary*, 217 F.3d 477, 482 (7th Cir.) (death of alibi witness did not constitute actual and substantial prejudice because witness' testimony was cumulative of other witnesses' testimony), cert. denied, 531 U.S. 1001, 121 S. Ct. 502, 148 L. Ed. 2d 471 (2000); *People* v. *Cowan*, 50 Cal. 4th 401, 431–34, 236 P.3d 1074, 113 Cal. Rptr. 3d 850 (2010) (there was no actual and substantial

prejudice because, despite fingerprint technician's age-related inability to recompare prints or to consider differences, prints remained "readily available" for retesting and use by defense, and contemporaneous police reports and interview recordings documented conversations that had been subject of faded memory), cert. denied, 563 U.S. 905, 131 S. Ct. 1784, 179 L. Ed. 2d 657 (2011); cf. *State* v. *Lee*, supra, 375 S.C. 399 (defendant suffered actual and substantial prejudice because he lost access to contemporaneous documentary evidence that was likely exculpatory because it would have explained why state returned stepchildren to his home and did not prosecute him at time of initial allegations of sexual abuse of stepchildren). Finally, in determining whether there is actual and substantial prejudice, the court considers the overall strength of the state's case. See, e.g., *United States* v. *Benshop*, 138 F.3d 1229, 1234–35 (8th Cir. 1998).

Only after the defendant clears the high hurdle of demonstrating actual and substantial prejudice does the burden shift to the state to produce evidence of the reasons for the delay—evidence that the state is uniquely well suited to produce. See, e.g., *United States* v. *Hagler*, supra, 700 F.3d 1099; see also *United States* v. *Sowa*, supra, 34 F.3d 451 (observing that "this is not a heavy burden for the [state] to bear; [its] standard practice in responding to motions to dismiss for [preindictment] delay is to explain the delay").

At that point, a court must balance the state's "reasons and the defendant's prejudice to determine whether the defendant was denied due process." *United States* v. *Hagler*, supra, 700 F.3d 1099. Bearing in mind the prosecutorial obligations both to assemble a case that will establish a defendant's guilt beyond a reasonable doubt and to do justice by not advancing dubious prosecutions, it will be an exceedingly rare case for a defendant to establish a due process violation when

the cause of "the delay is legitimately investigative in nature." *United States* v. *Sowa*, supra, 34 F.3d 451; see *People* v. *Nelson*, supra, 43 Cal. 4th 1256 (concluding that lengthy delay in bringing murder charge had "strong" justification and balanced out prejudice to defendant, despite fact that he was identified as suspect shortly after murder, because case was not "fully solve[d]" until comparison of defendant's DNA to crime scene evidence twenty-six years later). The state is not obligated to file charges as soon as it has probable cause to do so. See, e.g., *United States* v. *Lovasco*, supra, 431 U.S. 795 ("[r]ather than deviating from elementary standards of fair play and decency, a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt" (internal quotation marks omitted)).

Because "[d]ue process is not reducible to a mathematical formula"; *Commonwealth* v. *Devlin*, 460 Pa. 508, 516, 333 A.2d 888 (1975); see *Gibbs* v. *Burke*, 337 U.S. 773, 780, 69 S. Ct. 1247, 93 L. Ed. 2d 1686 (1949); the application of this balancing test will depend on the facts and circumstances of each case, as developed from the entire trial record, even when the matter is initially raised in a pretrial motion to dismiss,[4] and will

---

[4] As a practical matter, motions to dismiss based on prearrest delay need not be conclusively decided before trial because they do not implicate a defendant's right not to stand trial. See *United States* v. *Crouch*, supra, 84 F.3d 1516. As in the present case, a defendant may move to dismiss on the basis of a due process violation caused by prearrest delay, and a trial court may properly decide that motion as a pretrial matter. See id. Nevertheless, it will often be appropriate for the trial court to defer action on the motion, or for the defendant to renew that motion as a posttrial matter, because the actual trial record is likely to be determinative with respect to whether the defendant has established the requisite actual and substantial prejudice without resort to impermissible speculation. See, e.g., *United States* v. *Marion*, supra, 404 U.S. 325–26; *United States* v. *Crouch*, supra, 1516–17; *State* v. *Knickerbocker*, supra, 152 N.H. 471; *State* v. *Benson*, 370 Or. 58, 67–68, 514 P.3d 491 (2022).

be informed by the development of a body of case law applying this test as a question of law, with guidance from other jurisdictions that apply a similar balancing test. See, e.g., *United States* v. *Lovasco*, supra, 431 U.S. 797 ("[w]e therefore leave to the lower courts, in the first instance, the task of applying the settled principles of due process that we have discussed to the particular circumstances of individual cases"); *State* v. *Oppelt*, 172 Wn. 2d 285, 290, 257 P.3d 653 (2011) (due process balancing in prearrest delay cases is question of law requiring examination of the entire record); see also *In re Lukas K.*, 300 Conn. 463, 469, 14 A.3d 990 (2011) (due process balancing under *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), is question of law subject to plenary review).

In the present case, I assume without deciding that the defendant has carried his heavy burden of establishing actual and substantial prejudice. See, e.g., *Howell* v. *Barker*, supra, 904 F.2d 895. In balancing that prejudice against the state's reasons for its delay in bringing the charges against the defendant, I conclude that the defendant has failed to demonstrate that his due process rights were violated by the thirty-two year interval between the murders and his arrest. There is no evidence in the record that the delay in prosecuting him was the result of anything other than legitimate investigative reasons, given that the defendant's various confessions were not entirely consistent with the crime scene evidence. Moreover, I find one historic fact particularly persuasive in the balancing analysis. When the defendant murdered Fred Harris and Gregory Harris in 1987, the ultimate penalty was available to the prosecution during its investigation of this case.[5] The caution

---

[5] In 1987, Connecticut had a capital felony statute that made a double homicide an offense eligible for the imposition of the death penalty. See General Statutes (Rev. to 1987) §§ 53a-35a and 53a-54b (8). Although the death penalty has become a footnote in Connecticut's legal history since the enactment of No. 12-5 of the 2012 Public Acts; see generally, e.g., *State* v. *Peeler*, 321 Conn. 375, 140 A.3d 811 (2016); *State* v. *Santiago*, 318 Conn.

exercised by the state, including not charging the defendant following his confessions in 1996 and then waiting for more conclusive DNA testing, was highly reasonable for purposes of the balancing test. I therefore conclude that, when balanced against the assumed prejudice, the purely investigative delay renders the defendant unable to establish that his conviction violated "fundamental [concepts] of justice or the community's sense of fair play and decency." (Internal quotation marks omitted.) Id., 895.

Accordingly, I concur.

---

1, 122 A.3d 1 (2015); it was a viable punishment during much of the lengthy investigation of this case.