## State of Vermont v. Roland A. Hall

[487 A.2d 166]

No. 348-81

Present: Hill, Underwood, Peck and Gibson, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed December 21, 1984

300

*Dale O. Gray,* Caledonia County State's Attorney, and *Robert Butterfield,* Deputy State's Attorney, St. Johnsbury, for Plaintiff-Appellee.

*Andrew B. Crane,* Defender General, and *William A. Nelson,* Appellate Defender, Montpelier, for Defendant-Appellant.

**Peck, J.** This is an appeal by defendant from a judgment of the Vermont District Court, Unit No. 4, Caledonia Circuit, convicting him of lewd and lascivious conduct in violation of 13 V.S.A. § 2601. Trial was by jury. We affirm.

Defendant presents three questions for review by this Court. First, whether the admission of testimony of the state police investigating officer concerning the site of the alleged offense and another material location constituted a violation of the hearsay rule; second, whether this same testimony violated defendant's rights under the confrontation clause of the Sixth Amendment to the United States Constitution; and third, whether the delay of seventeen months in the preparation of the transcript of a pretrial suppression hearing, ordered to complete the record on appeal, denied defendant his constitutional right to due process and to obtain justice promptly and without delay, which, he argues, is applicable to appeals as well as to trials under Chapter I, Articles 4 and 10, and Chapter II, § 28, of the Vermont Constitution.

The facts, as they appear in the record, disclose that on September 1, 1980, two young women, the complaining witnesses, were traveling in a motor vehicle through St. Johnsbury, Vermont, en route to their homes in Montreal, Canada. At approximately seven o'clock in the morning of that date, they stopped at a restaurant in St. Johnsbury. Defendant, who was not known to either at the time, was seated near them at the counter. Before leaving the restaurant, one of the complainants asked defendant for directions to the northbound lane of Interstate Highway 91 leading towards Canada; defendant provided the requested information. The two women left the restaurant shortly thereafter and resumed their journey, stopping briefly for gasoline at a service station across the road from the restaurant.

Defendant acknowledged that he was in the restaurant as claimed by the two women, and that he gave them directions for reaching the Interstate. He acknowledged also that before leaving the restaurant, not long after the complainants, he saw and spoke briefly with an officer of the St. Johnsbury police department. The officer testified to this fact during the trial.

Once on the Interstate, the complainants proceeded northerly towards Canada at a speed estimated by them as between fifty-five and sixty miles per hour for fifteen to twenty-five minutes. At that point they were passed by a green car traveling at a high rate of speed. A short time later they observed the same car parked on the left shoulder of the road. At the rear of the car they saw a naked man engaging openly in an act which constituted the conduct prohibited by the statute under which defendant was charged.

The complainants continued on their way and notified the state police at their first opportunity of the incident they had witnessed. During the course of the subsequent police investigation, the complainants identified the man they had seen by the side of the highway as the defendant, and the same man who had been seated near them in the restaurant of whom they had asked directions. One of the complainants also identified the defendant without hesitation from a series of eight photographs shown to her by the state police. It was also established that defendant owned a green car similar to the one seen by the complainants on the highway.

An examination of defendant's claim relating to hearsay evidence and confrontation rights requires an understanding of the context in which the evidence was presented.

Approximately a week before the trial was scheduled to commence, and notwithstanding the court's earlier discovery order,* the defense informed the prosecution that it proposed to present an alibi witness. The defense knew of the existence of this witness much earlier, and had in fact interviewed him about a month after the alleged offense had occurred. Over the State's objection the trial judge, although indicating dis-

---

* The trial court's discovery order required defendant's counsel to "disclose to the prosecuting attorney within 10 days from the date here[of] a list of witnesses to be called at trial." The order was filed over seven months prior to trial.

pleasure at the untimely disclosure, virtually "on the eve of trial," ruled that since the failure to make an earlier disclosure was not attributable to the defendant personally, he would permit the witness to testify. The court agreed, however, that the State would be allowed a reasonable time to formulate a rebuttal.

The substance of the proposed testimony was to the effect that the alibi witness had seen and talked with defendant on the streets of St. Johnsbury at a time inconsistent with the latter's presence at the scene of the offense at the time it was committed. In short, the testimony was to be offered to rebut the complainants' identification of the defendant.

Facing the challenge of this unanticipated evidence, the investigating state police officer, accompanied by the complainants, drove over the route followed by the latter on September first, from the restaurant to the point on the highway at which they had seen defendant standing by his green car. The point at which complainants told him they had been passed by a green car a few minutes earlier was also noted by the officer. Thus, by following the same route, and at a rate of speed comparable to that at which complainants informed him they had driven on the day in question, the officer was able to clock the approximate number of minutes it supposedly took the complainants to reach these key points. On another trip, the officer drove the interstate portion of the trip at a higher rate of speed in accordance with the estimate by the complainants of the speed of the green car when it passed them. Again, the officer was able to formulate an estimate of the time it had taken the green car to reach the passing point as well as the point at which the complainants claimed to have seen the defendant at the side of the road.

During the State's case-in-chief, the police officer was called as a witness. The prosecutor questioned the officer concerning the trips the latter had made with the complaining witnesses, including the average speed at which he had traveled on the Interstate. No objections were interposed until the question was asked: "Now, did these two women tell you the location where they had been passed?" The officer replied in the affirmative, whereupon the defense objected on the grounds of hearsay.

The prosecution argued that the testimony was offered for purposes of identifying the scene of the offense, and as corroboration of the previously admitted testimony of the two complaining witnesses on the same subject matter. The court allowed the officer's affirmative response to stand: "We will take it as identification. Its admissible." Thereafter, the prosecutor continued to examine the officer along the same lines:

Q. And what happened when you passed that area? [where the green car had passed the complainants.]

A. When I reached the [mile] marker 145 area, this is where [one of the complainants] told me that [defendant] had been—had stopped his car [and] was standing there.

Q. Now, how fast were you going at that point?

A. Approximately 60 miles an hour.

Q. And do you recall the time you left [the restaurant]?

A. Yes.

Q. And how long a period of time passed before you got to mile marker 145?

A. Approximately 18 minutes.

It is evident, from the prosecutor's argument and the court's response, that the parties as well as the court treated the hearsay objection as applicable to this entire line of questioning. We will treat it accordingly even though the hearsay objection was not expressly renewed as to the questions and answers relating to speed and to the site of the offense.

Before commencing cross-examination, during a bench conference and again in chambers, defense counsel moved to strike the officer's testimony in its entirety, but not on the grounds of hearsay. The basis stated for the motion was a failure of the prosecution to comply with discovery requirements resulting in surprise and prejudice. The motion was denied, although the court attempted to cure the claim of surprise by allowing defense counsel time to reprise the trip from the restaurant to the material points on the Interstate with the officer and the complainants. The question of surprise was not raised thereafter.

Later, after defendant's alibi witness had testified and the defense had rested, the prosecutor recalled the state police

officer as a rebuttal witness. He testified that, at the request of the prosecution, he had made another run over the same route at the higher rate of speed, as described above, presumably to duplicate the speed at which complainants estimated the green car had been traveling as it passed them. He indicated the length of time it took him, at the increased speed, to reach the site of the offense. The only objection to this testimony was on the grounds of relevance. The question of hearsay was not raised then, or at any time thereafter until this appeal was instituted.

## I.

## HEARSAY–CONFRONTATION

Defendant argues that the testimony of the state police officer concerning the times taken to reach the point where complainants informed him they had been passed by the green car, and later, where they had seen defendant standing by his parked car, was based on hearsay, and accordingly, its admission was error. Similarly, he claims that the admission of the officer's testimony violated the confrontation clause of the Sixth Amendment of the United States Constitution.

### (a)

■ In the instant case, we need not determine whether the testimony of the officer was hearsay, or whether it was subject to one of the recognized exceptions to the hearsay rule. Assuming that its admission was improper, reversal is not required unless it is prejudicial to the defendant. *State* v. *Lupien,* 143 Vt. 378, 383, 466 A.2d 1172, 1175 (1983) (citing *State* v. *Wetherby,* 142 Vt. 248, 250, 453 A.2d 1124, 1125 (1982)). "To overturn a jury verdict, defendant has the burden of establishing prejudice to a degree warranting reversal." *State* v. *Lupien, supra; State* v. *Wetherby, supra.*

■■ The officer's testimony was consistent, within reasonable limits, with the various time and speed estimates made by the complainants themselves, which were already in the case without error. Therefore, even if the testimony was erroneously admitted, this Court has held that "[e]rror in the admission of evidence over objection and exception after evidence of like tenor has been admitted without objection is harmless."

*Leonard* v. *Henderson,* 118 Vt. 29, 37, 99 A.2d 698, 703 (1953). Applying this principle here, we hold that, in the light of the complainants' testimony, defendant has failed to establish any prejudice attributable to the officer's testimony. Accordingly, even if its admission was error, it was harmless and does not warrant reversal.

(b)

We reach a similar conclusion after review of defendant's claim that admission of the officer's testimony violated his constitutional right of confrontation. This is not a case like *State* v. *Towne,* 142 Vt. 241, 453 A.2d 1133 (1982), in which we held that hearsay evidence did in fact violate the defendant's right to confront the witnesses against him. *Id.* at 245–47, 453 A.2d at 1135–36.

In *Towne,* the opinion of an expert in psychiatry was interjected into the evidence. However, the expert himself was not in court. *Id.* Moreover, the record disclosed that he was not readily available. In the case before us, the complainants, upon whose information the officer had relied in his test drives, were in court; they gave time and speed estimates in their own testimony; they were readily available to the defense; they were seen and heard by the jury which was, therefore, in a position to judge their credibility, *id.* at 247, 453 A.2d at 1136 (citing *California* v. *Green,* 399 U.S. 149, 157–58 (1970)), and, sequentially, to judge the significance of the test drives made by the officer within the framework of their evidence.

Further, we take note that the officer's testimony on rebuttal, even if based on hearsay, was not subject to objection by defendant on that basis; it is raised here for the first time. We have held repeatedly, that in the absence of plain error, issues which are not raised below, even those having constitutional dimensions, will not be considered when presented for the first time on appeal. *State* v. *Patnaude,* 140 Vt. 361, 368, 438 A.2d 402, 404 (1981).

In view of the above considerations, and reiterating our assumption that admission of the officer's testimony was improper, we hold that, on the record before us, it was not plain error under the circumstances.

## II.

## APPELLATE DELAY

A seventeen month delay in producing the transcript of a pretrial motion to suppress evidence, due solely to the default of the reporter who left her job and the state, and not attributable to the defendant, the prosecution or the courts, is claimed by defendant to constitute a denial of due process under the speedy trial doctrine. He argues further that his right to obtain justice promptly and without delay under Chapter I, Articles 4 and 10, and Chapter II, § 28, of the Vermont Constitution, has been violated by the delay.

We will not hold that an excessive delay in the appellate process can never constitute sufficient due process grounds for reversal under the United States Constitution. Nevertheless, we decline to adopt, for purposes of appeals, the four pronged test applicable to pretrial level delays set forth by the United States Supreme Court in *Barker* v. *Wingo*, 407 U.S. 514, 530 (1972), as we are urged to do by defendant. We agree with those courts which have established a showing of substantial prejudice by the defendant as the underlying criterion or standard. See *State* v. *Chapple*, 135 Ariz. 281, 660 P.2d 1208 (1983); *United States* v. *Alston*, 412 A.2d 351 (D.C. 1980). In order to sustain his burden, a defendant must establish, as the State argued in its brief, that he has been unable to present an adequate appeal because of the delay, or that he will be unable to defend adequately in the event a retrial is ordered. *Chapple, supra,* at 298–99, 660 P.2d at 1225–26; *Alston, supra,* at 356–57. Moreover, the showing of prejudice must be based on concrete, practical considerations, rather than vague speculation unsupported by facts.

Defendant has made no showing of any substantial prejudice resulting from the delay. Mere anxiety concerning the outcome of the appeal, without more, is not sufficient. *People* v. *Missouri*, 100 Mich. App. 310, 323–25, 299 N.W.2d 346, 352–53 (1980). He makes no claim that he has been unable to present an adequate appeal, and the problem of retrial has been rendered moot by this decision. Moreover, the transcript of the pretrial hearing on defendant's motion to suppress discloses

that the trial court's denial of the motion was entirely sound. Defendant has not challenged this conclusion; the denial was neither briefed nor argued on appeal. Finally, defendant has already served his minimum sentence and has been released on parole. Although his parole status continues, with all of the disadvantages appertaining, the outcome of this appeal also renders that concern moot. "The remedy for dilatory review is review itself." *Id.* at 353 (citations omitted).

██ Because defendant has been unable to show any substantial prejudice resulting from the appellate delay, we hold that he has not been denied due process of law under the Fifth Amendment to the United States Constitution. *Id.*

Defendant argues next that his rights under the Vermont Constitution, Chapter I, Article 4 and Article 10, and Chapter II, § 28, have been violated.

Article 10 of Chapter I guarantees a speedy trial in criminal cases. Defendant argues that Article 4, which guarantees a person "right and justice . . . promptly and without delay," should be construed to expand that right to include appeals. Section 28 of Chapter II provides in part that, "Courts of Justice shall be open for the trial of all causes proper for their cognizance; and justice shall be therein . . . administered, without . . . unnecessary delay."

██ Defendant cites no authority for the interpretation and application of these constitutional provisions urged by him. Moreover, since, as noted earlier, the delay in procuring the transcript of pretrial proceedings was not attributable to either party or to the court, it appears that the delay was *necessary* in order to procure the transcript at all. Nevertheless, assuming for purposes of this case, but *without deciding,* that his argument is meritorious, and that the delay was "unnecessary" within the meaning of § 28, the application of these provisions, in accordance therewith, does not aid him here. In resolving issues of appellate delay under the Vermont Constitution, we will apply the same test which we adopted above to claims relating to appellate delays under the United States Constitution. In order to warrant reversal, defendant must show that substantial prejudice has resulted from the delay. In

the instant case, also as indicated above, defendant has failed to satisfy that burden.

*Affirmed.*