NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 131

No. 2015-053

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Criminal Division |
| | |
| Geoffrey King | February Term, 2016 |

Karen R. Carroll, J.

Michael Kainen, Windsor County State's Attorney, White River Junction, for
 Plaintiff-Appellant.

Joshua O'Hara, Appellate Defender, Montpelier for Defendant-Appellee.


PRESENT:  Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Tomasi, Supr. J.,
        Specially Assigned


¶ 1.    **SKOGLUND, J.**    Pursuant to Vermont Rule of Appellate Procedure 5(a), the superior court has—with the parties' consent—certified a question of law for our review in connection with the prosecution of defendant Geoffrey King.  Specifically, the court and parties ask this Court to determine what legal standard the court should apply to determine whether the State's approximately three-year delay in bringing charges against defendant violated defendant's due process rights under the U.S. and Vermont Constitutions.  We conclude that, to establish the State's preaccusation delay violated a defendant's due process rights under either the U.S. Constitution or the Vermont Constitution, the defendant must demonstrate actual substantial prejudice and prosecutorial misconduct intended to gain a tactical advantage or to advance some

other impermissible purpose that violates fundamental conceptions of justice. Because defendant fails to meet either prong of this standard, we affirm the superior court's denial of his motion to dismiss.

¶ 2. In August 2008, the Department for Children and Families (DCF) contacted Detective Patrick Call to report an alleged sexual assault by defendant on the complainant. The detective interviewed defendant regarding the alleged assault between September and November, 2008. Sometime prior to the end of 2008, the detective referred the case to the Windsor County State's Attorney's Office. Subsequently, the detective interviewed two witnesses in February 2009.

¶ 3. One of the witnesses initially interviewed was A.F., a friend of the complainant. A.F. said that once—when she and the complainant were teenagers and the complainant was sleeping over—she asked the complainant why she "was kind of weird about [guys]." The complainant told A.F. that she was abused when she was little. In the interview, A.F. explained to the detective that she believed the complainant meant that defendant had had vaginal sex with the complainant. Following this interview with A.F. in February 2009, no activity in the criminal case occurred until August 2012.

¶ 4. Prior to the renewed activity, DCF indicated in a January 10, 2009, letter that the reported sexual assault had been substantiated. Although defendant did not appeal the substantiation decision, he subsequently requested that the substantiation be expunged; the DCF Commissioner denied the expungement request on June 25, 2012.

¶ 5. On August 6 or 7, 2012, the complainant's mother contacted the Windsor County State's Attorney's Office to inquire about the case. As a result of her message, the new Deputy State's Attorney (DSA) tasked with prosecuting sex crimes reviewed the case referral file, to determine the status of the case. After reviewing the file, the DSA contacted the complainant's mother. In their conversation, the new DSA indicated that the state's attorney's office did not

want to file charges against defendant without assurances from the complainant that she wanted to move forward and, further, that he believed an email string in the file indicated that the office never received this confirmation from the complainant after the initial investigation. The complainant's mother then told the DSA that the complainant wished to pursue charges. Subsequently, the DSA contacted Detective Call to conduct a follow-up investigation before the State filed charges.

¶ 6. On August 30, 2012, the State charged defendant with aggravated sexual assault of a child under ten, in violation of 13 V.S.A. § 3253(a)(8), and lewd and lascivious conduct with a child, in violation of 13 V.S.A. § 2602. The DSA conceded that the affidavit of probable cause did not include any substantive evidence gathered after February 11, 2009.

¶ 7. Prior to trial, defendant filed a motion to dismiss arguing that the three and a half year gap between the conclusion of the initial investigation in February 2009, and the filing of charges in late August 2012, violated his due process rights under Article One, Chapters 4 and 10 of the Vermont Constitution. After an evidentiary hearing on February 13, 2014, the superior court denied defendant's motion to dismiss. The court first concluded that the Vermont Constitution did not require a different standard than the analysis under the federal constitution for determining whether a preaccusation delay violated the due process clause. That federal standard, according to the superior court, required defendant to prove two things—that he was substantially prejudiced by the delay and that the State intentionally delayed to gain a tactical advantage over him—neither of which defendant had proved. In particular, the court determined that any discrepancy in the witnesses' testimony as a result of the delay could actually benefit defendant by opening the witness to impeachment.

¶ 8. Defendant's trial commenced on September 17, 2014. The State's case rested on the complainant's testimony and the testimony of A.F., who testified at trial that she believed defendant forced the complainant to perform oral sex on defendant. Defendant's cross-examination of A.F. focused on the inconsistencies between A.F.'s initial interview with Detective

3

Call, her June 28, 2013 deposition in preparation for trial, and her trial testimony; specifically, whether the alleged assault involved oral or vaginal sex. A.F. testified that, based on their conversation as teenagers, she inferred that the complainant meant vaginal sex and that she relayed this assumption to Detective Call in their initial February 2009 interview; however, in preparation for her deposition on June 28, 2013, she contacted the complainant, who clarified that the alleged assault involved oral sex, not vaginal.

¶ 9. Defendant similarly attacked the inconsistencies in the complainant's testimony. The complainant's initial statement in 2009 involved great detail, then her deposition five years later, in 2014, contained less detail, and finally, her trial testimony contained more detail. The complainant explained the discrepancies by testifying that she did not review her initial 2009 interview prior to her deposition, but that she did review the interview prior to her trial testimony, which refreshed her recollection of the details.

¶ 10. In the parties' closing arguments, the State acknowledged that the complainant's memory of the events was inconsistent. But the State justified those inconsistencies by referring to the five-year delay between the complainant's initial report and the trial. The State further noted that the discrepancies were actually a sign of the complainant's honesty, because "[s]he didn't put in every detail one could possibly put in if one wanted to get somebody in trouble." By contrast, defendant again focused on the complainant's inconsistencies in his closing, noting that "already we have different sworn testimony in a deposition, different sworn testimony here at trial, and different unsworn interview testimony." And defendant further categorized A.F.'s inconsistent testimony as "evasive."

¶ 11. The trial resulted in a hung jury. Subsequently, defendant filed a motion for mistrial and dismissal with prejudice; in this motion, defendant again claimed that the action should be dismissed because the State's preaccusation delay violated his due process. In considering the motion, the court noted that, at trial, defendant took advantage of the inconsistencies between the

4

complainant and A.F.'s prior depositions and trial testimony; as a result, "the inconsistent testimony was far more prejudicial to the State than to the Defendant." The court further relied on its previous order dismissing defendant's pretrial motion, noting, "Nothing that occurred during the jury trial changes the Court's decision on the motion." The court subsequently denied defendant's motion.

¶ 12. In anticipation of a retrial, the superior court certified this question of law for our review: under the U.S. and Vermont Constitutions,[1] what is the proper standard for evaluating whether a preaccusation delay violates a defendant's due process rights?

¶ 13. Broadly speaking, statutes of limitation provide the chief protection against the government bringing overly stale charges. United States v. Marion, 404 U.S. 307, 322 (1971). In limited circumstances, however, the Due Process Clause of the Fifth Amendment requires dismissal of a charge if the preaccusation delay violates a two-pronged test: "[T]he due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." United States v. Lovasco, 431 U.S. 783, 790 (1977); see also Marion, 404 U.S. at 322 (1971).

¶ 14. Consensus exists that a defendant must demonstrate actual substantial prejudice to satisfy one prong of the test, not speculative or premature prejudice. See, e.g., Lovasco, 431 U.S. at 789 ("[P]roof of actual prejudice makes a due process claim concrete and ripe for adjudication."); United States v. Automated Med. Labs., Inc., 770 F.2d 399, 404 (4th Cir. 1985) (dismissing due process claim because defendant was prejudiced only slightly, if at all, by loss of witnesses' testimony).

¶ 15. But the federal circuit courts disagree about the showing a defendant must make to prove unjustifiable prosecutorial reasons for the preaccusation delay. A majority of the circuits

---

[1] The certified question and the parties focus on whether this Court should apply a different standard under the Vermont Constitution than the standard that exists in the majority of circuit courts. See infra, ¶ 20. In order to make that assessment, we first make a definitive ruling as to the applicable standard under the Due Process Clause of the U.S. Constitution. Infra, ¶ 23.

require the defendant to demonstrate "improper prosecutorial motive," while two circuits "hold that the proper inquiry is to balance the prejudice to the defendant against the Government's justification for delay." Hoo v. United States, 484 U.S. 1035, 1036 (1988) (White, J., dissenting on denial of certiorari) (surveying circuit split and citing United States v. Valentine, 783 F.2d 1413, 1416 (9th Cir. 1986); Automated Med. Labs., 770 F.2d at 403-404 (quotation omitted)).

¶ 16.    This disagreement over the defendant's burden under the second prong arises from competing interpretations of the two U.S. Supreme Court cases addressing preaccusation delay: Marion and Lovasco.  In Marion, after concluding the Speedy Trial Clause did not protect the defendants from the State's preaccusation delay, the U.S. Supreme Court found that the Due Process Clause had "a limited role to play in protecting against oppressive delay."  Lovasco, 431 U.S. at 789-90 (articulating Marion's holding).  As an example, the U.S. Supreme Court approvingly noted the government's concession that dismissal would be warranted under the due process clause if the "delay was an intentional device to gain tactical advantage over the accused" and if the delay actually prejudiced defendant.  Marion, 404 U.S. at 324.  But the Marion court expressly declined to determine if those circumstances were present and, instead, held that the defendants did not adequately allege that they were actually prejudiced.  Id. at 326 (finding that defendants relied on broad, unspecific allegations of prejudice, i.e., "that memories will dim, witnesses become inaccessible, and evidence be lost").

¶ 17.    In Lovasco, the U.S. Supreme Court clarified that delay for "investigative purposes" did not evince an improper prosecutorial motive sufficient to deprive a defendant of due process, "even if his defense might have been somewhat prejudiced by the lapse of time." Lovasco, 431 U.S. at 796.  In Lovasco, the government filed an indictment against the defendant eighteen months after the criminal acts occurred; the government's sole reason for the delay was a hope that the delay would flush out the defendant's accomplices, a hope that the Court of Appeals held did not justify the delay.  Id. at 790.

6

¶ 18.   The Supreme Court disagreed, noting "that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." Id. at 789.  Although the Court of Appeals may not have agreed with the prosecutor's decision as to when to charge the defendant, courts could not "abort criminal prosecutions simply because they disagre[ed] with [the] prosecutor." Id. at 790.  Instead, the Supreme Court reasoned that courts—during their examination of the government's reasons for the delay—possessed only a circumscribed duty to determine whether the reason for the delay violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency." Id. at 790 (citations and quotations omitted).

¶ 19.   Applying this formula, the Supreme Court concluded that it did not violate "fundamental conceptions of justice" for a prosecutor to defer an indictment until probable cause was established, to delay charges until sufficient evidence of guilt beyond a reasonable doubt was assembled, or to postpone a formal indictment until the investigation was complete, even if sufficient evidence already existed to establish guilt beyond a reasonable doubt. Id. at 790-95.  At each step, the Supreme Court emphasized, a rule that required a prosecutor to file charges would adversely affect the defendant, the government, and the courts. Id.  For example, if the government were required to file charges as soon as sufficient evidence was collected to establish guilt beyond a reasonable doubt, it "would preclude the Government from giving full consideration to the desirability of not prosecuting in particular cases" and the "awesome consequences" resulting from filing charges. Id. at 794.  Given these potentially adverse consequences, the Court concluded that, without a clear command in the Due Process Clause or in some other constitutional language, it could not adopt the rule advocated by the defendant that "due process bars prosecution whenever a defendant suffers prejudice as a result of preindictment delay." Id. at 795, 789.  The Court acknowledged that it "could not determine in the abstract the circumstances in which preaccusation

7

delay would require dismissing prosecutions" and left it to the lower courts to apply the due process principles to specific cases. Id. at 796-97. In Lovasco's particular case, however, the Court held that, even if the defendant may "have been somewhat prejudiced by the lapse of time," "investigative delay does not deprive [a defendant] of due process." Id. at 796.

¶ 20.     After Marion and Lovasco, a majority of the circuit courts embraced the Supreme Court's instruction that the Due Process Clause provides only a circumscribed duty to review preaccusation delay. Lovasco, 431 U.S. at 796, see, e.g., Hoo, 484 U.S. at 1036 (White., J., dissenting); United States v. Lebron-Gonzalez, 816 F.2d 823, 831 (1st Cir. 1987); United States v. Cornielle, 171 F.3d 748, 751-52 (2nd Cir. 1999). To this end, moreover, these circuits often follow the Supreme Court's lead under the second prong and distinguish improper preaccusation delay from investigative delay, reiterating that investigative delay is not precluded by the Due Process Clause because "there is no requirement . . . that a prosecutor seek an indictment the moment he has probable cause to believe that an accused is guilty." United States v. Ismaili, 828 F.2d 153, 168 (3rd Cir. 1987); Lebron-Gonzalez, 816 F.2d at 831 ("[E]ven though the prosecution has probable cause, it is under no duty to initiate criminal proceedings until it is satisfied that it can establish guilt beyond a reasonable doubt."). Indeed, several courts go further and restrict proof under the second prong to "intent by the prosecution to gain a tactical advantage" rather than allowing defendants to satisfy the second prong by proving any impermissible purpose advanced by the prosecution. See Lebron-Gonzalez, 816 F.2d at 831; cf. Hoo, 484 U.S. at 1036 (White., J., dissenting) (noting majority test is "a showing of prosecutorial misconduct designed to obtain a tactical advantage over the defendant or to advance some other impermissible purpose in order to establish a due process violation" (emphasis added)).

¶ 21.     After examining our precedent with this legal background in mind, we conclude that this Court previously adopted the majority standard, albeit without extensive analysis of the second prong. In State v. Delisle, for example, we held that a nearly fourteen-year delay in the

8

indictment did not violate due process. 162 Vt. 293, 312, 648 A.2d 632, 644 (1994). To reach this conclusion, we articulated the majority's two-prong test: "In making this inquiry, courts should consider the reasons for the delay and the actual prejudice to the defendant." Id. Our analysis then clearly examined both of the test's prongs, rather than following the minority standard and balancing the reasons for the delay against the defendant's prejudice. Id. at 312-13, 648 A.2d at 644. But, because the defendant did not contest the reason for the delay on appeal, we only briefly noted that "the cause of the delay was a lack of evidence sufficient to bring on earlier prosecution" and then cited Lovasco, indicating that the State's reasons fell within permissible investigative delay and did not violate fundamental conceptions of justice. Id. at 313, 648 A.2d at 644. Under the prejudice prong, moreover, we found that the defendant could not prove actual prejudice from any lost testimony because the defendant could not demonstrate the "exculpatory value" of the lost testimony. Id. Thus, although Delisle did not involve a detailed examination of the majority standard, this Court undoubtedly applied the standard in its analysis. Accord State v. Beer, 2004 VT 99, ¶¶ 40, 42, 177 Vt. 245, 864 A.2d 643 (concluding that defendant failed to identify any actual substantial prejudice and that State's delay in bringing charges—in order to obtain admissible corroborating evidence—did not evince impermissible purpose), overruled on other grounds by State v. Brillon, 2008 VT 35, 183 Vt. 475, 955 A.2d 1108; State v. Ellis, 149 Vt. 264, 268, 542 A.2d 279, 282 (1988) ("[Defendant] has made no claim that the delay has prejudiced his defense in the probation revocation hearing, or that the State intentionally caused the delay to gain a tactical advantage.").

¶ 22. We do not conclude, however, that a showing of improper prosecutorial motive under the second prong is limited only to the intent to "gain a tactical advantage." Cf. Lebron-Gonzalez, 816 F.2d at 831 ("In addition to prejudice there must be an intent by the prosecution to gain a tactical advantage."). First, the U.S. Supreme Court did not limit the second prong only to showings of prosecutorial misconduct designed to obtain a tactical advantage. As noted above,

9

the phrase "tactical advantage" had its genesis in <u>Marion</u>, 404 U.S. at 324; however, the <u>Marion</u> court expressly declined to hold that those circumstances were present and, instead, held that the defendants did not adequately allege that they were prejudiced. <u>Id</u>. at 326. Moreover, the <u>Marion</u> court noted that it could not determine in the abstract what circumstances would require dismissing a charge because of preaccusation delay. <u>Id</u>. at 324. Similarly, in <u>Lovasco</u>, the Supreme Court reiterated that the circumstances behind the delay must be evaluated on a case-by-case basis and that a prosecutor's various reasons for the delay should be examined in the light of "fundamental conceptions of justice." 431 U.S. at 790. In <u>Delisle</u>, moreover, we assumed the <u>Lovasco</u> language, stating that "[p]rosecution will be barred where the delay violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency." <u>Delisle</u>, 162 Vt. at 312, 648 A.2d at 644 (quotations and citations omitted); see also <u>Beer</u>, 2004 VT 99, ¶ 39 ("[T]he court must determine whether compelling defendant to stand trial in light of the delay violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency." (quotations omitted)). Because neither the Supreme Court opinions nor our precedents limit the showing necessary to establish intentional prosecutor misconduct to the intent to gain a tactical advantage, we decline to do so here.

¶ 23. We hold, therefore, that to establish that preaccusation delay violated the Due Process Clause, a defendant must demonstrate actual substantial prejudice and prosecutorial misconduct intended to gain a tactical advantage or to advance some other impermissible purpose that violates "fundamental conceptions of justice" or "the community's sense of fair play and decency." <u>Lovasco</u>, 431 U.S. at 790.

¶ 24. We do not agree with defendant that our previous decisions "strongly suggest" that this Court follows the minority standard when applying the Due Process Clause to preaccusation delay. That minority standard, as briefly explained above, requires a defendant to first establish

actual substantial prejudice from the delay and then "show that the length of the delay, when balanced against the government's reasons for the delay, offends those 'fundamental conceptions of justice which lie at the base of our civil and political institutions.' " Valentine, 783 F.2d at 1416 (quoting Lovasco, 431 U.S. at 783); see also Automated Medical Labs., Inc., 770 F.2d at 403-04. These circuits reject the majority's test based on the policy argument that the majority approach greatly restricts a defendant's ability to establish a due process violation:

> [N]o matter how egregious the prejudice to the defendant, and no matter how long the preindictment delay, if a defendant cannot prove improper prosecutorial motive, then no due process violation has occurred. This conclusion, on its face, would violate fundamental conceptions of justice, as well as the community's sense of fair play. Moreover, this conclusion does not contemplate the difficulty defendants either have encountered or will encounter in attempting to prove improper prosecutorial motive.

Howell v. Barker, 904 F.2d 889, 895 (4th Cir. 1990). In practical effect, however, the circuit courts espousing this minority test often determine that a defendant has not established actual prejudice or that any alleged prejudice is relatively slight and, thus, dismiss the defendant's claims without reaching the second prong. See Valentine, 783 F.2d at 1417 (dismissing defendant's claim because his bare allegations of prejudice were "speculative and insufficient to establish a denial of due process"); Automated Med. Labs, 770 F.2d at 404 (finding defendant was prejudiced slightly, if at all, by witness's disappearance because content of his testimony was speculative and not significantly helpful to defendant).

¶ 25. In contrast to the minority standard, our past decisions clearly require the defendant to prove both prongs: actual substantial prejudice and prosecutorial misconduct that intentionally violated some fundamental conception of justice or advanced some other impermissible purpose, such as attempting to gain an improper tactical advantage over the accused. See, e.g., Beer, 2004 VT 99, ¶¶ 40, 42; Ellis, 149 Vt. at 268, 542 A.2d at 282. Although our analysis of each prong may have been minimal, that does not mean that we did not adopt the majority standard.

11

¶ 26. Further, we are not persuaded by the reasoning behind the minority standard. We are mindful that, as the Supreme Court indicated, courts merely possess a circumscribed duty to determine whether the preaccusation delay violates due process. See Lovasco, 431 U.S. at 790. Statutes of limitation provide the core protection against the State bringing overly stale charges and, in the period prior to formal charges, the Due Process Clause has a limited role to play. Marion, 404 U.S. at 322. It is only when the State's motives evince an intentional disregard for the "fundamentals of justice" or "the community's sense of fair play and decency" that a due process violation occurs. Lovasco, 431 U.S. at 790 (citations and quotations omitted). It may be true, as the minority circuit courts argue, that defendants will find it difficult to prove both prongs of the majority standard and, in particular, to establish an improper prosecutorial motive. Howell, 904 F.2d at 895. But that difficulty helps maintain the limited applicability of the Due Process Clause to preaccusation delay. As the Supreme Court noted, there are compelling reasons to justify such a limited application—reasons that benefit the government, the defendant, and the courts. Absent a clear constitutional mandate, we are unwilling to adopt a test that, in expanding due process protections, creates adverse effects for the government, courts, and defendants.

## I. The Vermont Constitution

¶ 27. Having articulated the standard for analyzing preaccusation delay under the U.S. Constitution, we must now consider whether Vermont's constitution requires a different test. Given our previous precedent analyzing Vermont's due process clause, we conclude that the same standard should be applied to evaluate preaccusation delay for due process violations.

¶ 28. Chapter I, Article 4 of the Vermont Constitution provides:

> Every Person within this state ought to have a certain remedy, by having recourse to the laws, for all injuries or wrongs which one may receive in person, property or character; every person ought to obtain right and justice, freely, and without being obliged to purchase it; completely and without any denial; promptly and without delay; conformably to the laws.

12

¶ 29.    Further, Chapter II, § 28 states that the "Courts of Justice shall be open for the trial of all causes proper for their cognizance; and justice shall be therein impartially administered, without corruption or unnecessary delay."

¶ 30.    Although we have not had the opportunity to examine these clauses in the context of preaccusation delay,[2] we have examined them in relation to other "speedy disposition" claims. See, e.g., State v. Dean, 148 Vt. 510, 514-15, 536 A.2d 909, 915 (1987) (analyzing defendant's claim that post-trial delay in ruling on sentence reconsideration motion violated Vermont constitution), abrogated on other grounds by Betterman v Montana; __ U.S. __, 136 S.Ct. 1609 (2016); State v. Hall, 145 Vt. 299, 307, 487 A.2d 166, 171 (1984) (addressing defendant's argument that appellate delay violated Vermont's due process clause).  As we noted in Dean, these "decisions have generally found, without extensive analysis, that the rights of defendants in this area are the same under the Vermont Constitution as under the federal constitution."  148 Vt. at 515, 536 A.2d at 913.  The reoccurring issue is that the briefing and our opinions rarely delve into the alleged differences between the federal and state due process provisions.  Id.

¶ 31.    In Dean, for example, the defendant argued that a delay in ruling on a sentence reconsideration motion violated the same parts of Vermont's constitution at issue here—Chapter I, Article 4 and Chapter II, § 28—as well as Chapter I, Article 10 (articulating right to "speedy public trial").  Because the relevant article in New Hampshire's constitution mirrors Article 4 of Vermont's constitution,[3] we turned to a New Hampshire Supreme Court opinion to clarify our

---

[2]  The defendant in Beer did present a claim under the Vermont Constitution; however, we did not consider whether the Vermont Constitution necessitates a different standard.  2004 VT 99, ¶ 38.

[3]  The analogous article in the New Hampshire Constitution read as follows:

> Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without

analysis of the clauses. Dean, 148 Vt. at 515; 536 A.2d at 913 (citing State ex rel. McLellan v. Cavanaugh, 498 A.2d 735 (N.H. 1985)). In Cavanaugh, the New Hampshire Supreme Court found that the guarantee of a speedy trial protected against the same policy concerns as a speedy disposition after trial; that is, both claims "serve[d] to prevent undue and oppressive pretrial incarceration, to minimize the anxiety that attends public accusation, and to limit the risk that a long delay might impair the ability of the accused to defend himself." Cavanaugh, 498 A.2d at 738-39. Because there were "similar policy objectives behind both speedy trial and speedy disposition rights," the New Hampshire Supreme Court concluded that it should apply the flexible Barker factors created by the U.S. Supreme Court to address speedy trial claims. Cavanaugh, 498 A.2d at 739 (citing Barker v. Wingo, 407 U.S. 514, 521 (1972)).

¶ 32.     This Court, however, declined to follow the New Hampshire Supreme Court and apply the more flexible Barker factors to sentence reconsideration proceedings. Instead, we held that the standard we had previously articulated for analyzing appellate delays in State v. Hall should also be applied to delays involving sentence reconsideration motions, Dean, 148 Vt. at 516, 536 A.2d at 913; under the Hall standard, "in order to warrant reversal, [a] defendant must show that substantial prejudice has resulted from the delay." Hall, 145 Vt. at 308, 487 A.2d at 172. In particular, we noted that the policy concerns cited by the Cavanaugh court were present to "a lesser degree in sentence reconsideration proceedings." Dean, 148 Vt. at 516, 536 A.2d at 913. Thus, by declining to apply the more flexible "speedy trial" standard, this Court recognized that a more rigid test reflected the lesser policy concerns surrounding post-trial due process claims.

¶ 33.     In this case, we believe that the due process concerns enumerated in Cavanaugh are also present to a reduced degree in cases involving preaccusation delay and, more important, are

being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws.

N.H. Const. Pt. 1, art. 14.

14

balanced by competing policy concerns favoring a less flexible standard. In Cavanaugh, the New Hampshire Supreme Court cited three policy concerns: "prevent[ing] undue and oppressive pretrial incarceration, [minimizing] the anxiety that attends public accusation, and [limiting] the risk that a long delay might impair the ability of the accused to defend himself." Cavanaugh, 498 A.2d at 738-39. Of the three, the first two are not present in cases involving preaccusation delay because, absent a formal charge, no incarceration or public accusation occurs. At the same time, a rule that requires prosecutors to file charges at a certain time would invite the same adverse consequences articulated by the U.S. Supreme Court in Lovasco. 431 U.S. at 793 (noting, among other concerns, that "insisting on immediate prosecution once sufficient evidence is developed to obtain a conviction would pressure prosecutors into resolving doubtful cases in favor of early and possibly unwarranted prosecutions").

¶ 34.   Given these competing policy concerns, we find further support for a less flexible standard in the structure of the Vermont Constitution, which suggests a more circumscribed protection for due process claims. For example, in contrast to the "speedy trial" clause embodied in Chapter 1, Article 10, the due process clauses of the Vermont Constitution do not specifically articulate a protection against preaccusation delay. Like the U.S. Supreme Court, absent more specific due process protections, we are reluctant to adopt a more flexible standard that could invite adverse consequences for the government, the courts, and defendants.

¶ 35.   Finally, we are mindful of our previous decisions broadly determining that a defendant's due process rights are the same under the Vermont Constitution as under the federal constitution. Dean, 148 Vt. at 515, 536 A.2d at 913; see also State v. Snide, 144 Vt. 436, 442, 479 A.2d 139, 143 (1984); State v. Bristol, 143 Vt. 245, 249, 465 A.2d 278, 280 (1983); State v. Franklin, 136 Vt. 568, 569, 396 A.2d 138, 139 (1978). Although our previous decisions do not engage in extensive analysis on this point, in combination with the important policy concerns articulated above, we conclude that consistency between federal and state due process claims is an

15

important factor. As a result, we hold that the standard for establishing that preaccusation delay violated the Vermont Constitution is the same as the standard described above for finding a due process violation under the federal constitution.

¶ 36. Defendant urges us to adopt one of two flexible standards for reviewing preaccusation delay under the Vermont Constitution. One of the tests advocated by defendant hews closely to the minority standard articulated in the federal circuits. For example, in State v. Philibotte, New Hampshire requires a defendant to show initially that "actual prejudice has resulted from a delay" and, after that showing is made, "the trial court must then balance the resulting prejudice against the reasonableness of the delay." 459 A.2d 275, 277 (N.H. 1983) (citations omitted); see also State v. Whiting, 702 N.E.2d 1199, 1201 (Ohio 1998). Defendant argues that, because New Hampshire and Vermont have similar constitutional due process provisions, we should follow New Hampshire's lead and apply the minority standard under our state constitution.

¶ 37. In adopting this version of the test, however, the New Hampshire Supreme Court did not analyze the state's constitutional provisions; rather, the court followed the precedent set by the First Circuit, which uses the minority test. See Philibotte, 459 A.2d at 277 (referencing Marion and Lovasco and law established by First Circuit); State v. Knickerbocker, 880 A.2d 419, 423 (2005) (clarifying that "the test for a due process violation under the State Constitution based upon pre-indictment delay is that set forth in Philibotte"). By contrast, the Second Circuit follows the majority standard, a fact that more aptly supports our adoption of the majority standard. See Cornielle, 171 F.3d at 752 ("A defendant bears the 'heavy burden' of proving both that he suffered actual prejudice because of the alleged pre-indictment delay and that such delay was a course intentionally pursued by the government for an improper purpose." (quotation omitted)). Moreover, as previously demonstrated in Dean, we did not follow the New Hampshire court's more permissive interpretation of its constitutional provisions precisely because we determined

16

the policy concerns were present to "a lesser degree" in certain due process inquiries. Dean, 148 Vt. at 516, 536 A.2d at 913. For the same reasons, we do not adopt the more flexible test employed by New Hampshire.

¶ 38. On similar grounds, we reject the second, alternative test defendant espouses. That test, formulated by the Court of Appeals of New York in People v Singer, requires the state, after "a protracted delay" in bringing charges, to establish good cause for the delay: "[I]f commencement of the action has been delayed for a lengthy period, without good cause, the defendant may be entitled to a dismissal although there may be no showing of special prejudice." 376 N.E.2d 179, 186-87 (N.Y. 1978). To determine whether the delay violated a defendant's due process rights, New York courts balance five flexible factors. People v. Decker, 912 N.E.2d 1041, 1041-42 (N.Y. 2009). "[A]ll other factors being equal, the greater the delay, the more probable it is that the accused will be harmed thereby." Id. at 1042 (quotation omitted). As defendant acknowledges, this is a more flexible version of the minority standard. As a result, the test has a greater probability of causing the adverse consequences detailed in our analysis above and we decline to implement this more flexible standard.

## II. Applying the Standard to Defendant

¶ 39. To establish the preaccusation delay violated defendant's due process rights under either the U.S. Constitution or the Vermont Constitution, defendant must demonstrate actual substantial prejudice and prosecutorial misconduct intended to gain a tactical advantage or to advance some other impermissible purpose. We conclude that defendant fails to meet either prong of this standard and so affirm the superior court's denial of defendant's motion to dismiss.

¶ 40. Generally, we review the superior court's denial of a defendant's motion to dismiss for abuse of discretion. State v. Keith, 160 Vt. 257, 266, 628 A.2d 1247, 1253 (1993). In this case, however, the court applied a slightly more restrictive version of the majority standard than the one we adopt in this opinion—the trial court required defendant to demonstrate actual

17

substantial prejudice and the State's intention to gain a tactical advantage over defendant. In most cases, the application of this different standard would require a remand to the superior court. But given the undisputed facts on appeal, we conclude that defendant's claim is legally insufficient to establish a due process violation under the standard articulated in this opinion. See State v. Mara, 2009 VT 96A, ¶ 6, 186 Vt. 389, 987 A.2d 939 ("We review questions of law de novo.").

¶ 41. First, it is clear from the record that defendant was not substantially prejudiced by the delay. In this context, prejudice means "that sort of deprivation that impairs a defendant's right to a fair trial." Cornielle, 171 F.3d at 752. "This kind of prejudice is commonly demonstrated by the loss of documentary evidence or the unavailability of a key witness." Id. In this case, defendant alleges neither a loss of evidence nor the unavailability of a key witness. Rather, defendant's claim that he was prejudiced at trial rests on the dimming and inconsistent memories of A.F. and the complainant: in the complainant's case, defendant maintains that her dimming memory allowed the State to bolster her credibility in the closing arguments; while in A.F.'s case, defendant's argument is that her fading memory cost defendant a witness that contradicted the complainant's allegations. But the argument that the delay caused witnesses' memories to dim "has not been considered the sort of actual substantial prejudice that predicates reversal for pre-indictment delay." United States v. Elsbery, 602 F.2d 1054, 1059 (2nd Cir. 1979); see also Automated Med. Labs., Inc., 770 F.2d at 404 (dismissing due process claim because defendant was prejudiced only slightly, if at all, by loss of witnesses' testimony); Delisle, 162 Vt. at 313, 648 A.2d at 644 (concluding death of two witnesses did not prejudice defendant because he did not demonstrate exculpatory value of lost testimony). In fact, as found by the superior court, it appears that defendant's ability to impeach A.F. and the complainant with their inconsistent statements benefited defendant.

¶ 42. Second, there is no evidence that the State delayed in order to gain a tactical advantage or to advance some other impermissible purpose that violates fundamental conceptions

18

of justice. On appeal, defendant claims that there was no justification for the delay. But, as noted by the superior court, the State's explanation for the delay was that the former prosecutor involved in the case wanted to be assured that the complainant would support the charges and would be willing to proceed with the case. This reason falls well within permissible delay. In Delisle, we upheld a fourteen-year delay because, absent a crucial witness, there was insufficient evidence to bring on earlier prosecution. 162 Vt. at 313, 648 A.2d at 644. In this case, absent the complainant's cooperative testimony, it seems certain that insufficient evidence existed for the State to establish defendant's guilt beyond a reasonable doubt. See Lovasco, 431 U.S. at 791 ("It should be equally obvious that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt.").

To prove that preaccusation delay violated a defendant's due process rights under either the U.S. Constitution or the Vermont Constitution, the standard articulated in this opinion is adopted. Affirmed as to defendant's motion for mistrial and dismissal with prejudice.

FOR THE COURT:

_____
Associate Justice

¶ 43. **ROBINSON, J., concurring in part and dissenting in part.** I concur in the result, but write separately to advocate a different test under the Vermont Constitution for evaluating claims of undue pre-charge or pre-indictment delay.

¶ 44. In my view, the primary Vermont case relied upon by the majority does not support the majority's conclusion, and actually offers compelling reasons to reject it. The better test is that adopted by the New Hampshire Supreme Court in State v. Knickerbocker, 880 A.2d 419 (N.H. 2005).

19

¶ 45.   I part ways with the majority's suggestion that this Court's decision in State v. Delisle, 162 Vt. 293, 648 A.2d 632 (1994), presages the majority's holding today, and believe that the Delisle decision supports a different approach.  In Delisle, the Court considered an appeal of a second-degree murder conviction.  Nearly fourteen years had passed between the homicide and the indictment.  During that time, the State failed to preserve a tarp in which the victim's body was wrapped when it was discovered as well as a fractured hyoid bone.  On appeal, the Court addressed defendant's argument that the loss of evidence violated his rights under the U.S. and Vermont Constitutions.  The Court recognized that the federal standard for addressing this claim was established by the case of Arizona v. Youngblood, 488 U.S. 51 (1988).  Delisle, 162 Vt. at 309, 648 A.2d at 642.  Pursuant to this federal standard, " 'unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of the due process of law.' "  Id. (citing Youngblood, 488 U.S. at 58).  However, the Court recognized that "[d]isposition of defendant's federal constitutional claim does not necessarily resolve [the] state constitutional claim."  Id.  The Court opined that the federal standard is too narrow because "it limits due process violations to only those cases in which a defendant can demonstrate bad faith" even though "the negligent loss of evidence may critically prejudice a defendant."  Id. at 310, 648 F.2d at 643.

¶ 46.   The Court endorsed a separate standard for evaluating lost evidence claims under the Vermont Constitution, originating in the Court's pre-Youngblood decision in State v. Bailey, 144 Vt. 86, 92, 475 A.2d 1045, 1049 (1984). Pursuant to the Bailey test, if the defendant shows a reasonable possibility that the lost evidence would be exculpatory, the court engages in a "pragmatic balancing of three factors: (1) the degree of negligence or bad faith on the part of the government; (2) the importance of the evidence lost; and (3) other evidence of guilt adduced at trial."  Delisle, 162 Vt. at 310, 648 A.2d at 642-43 (quoting Bailey, 144 Vt. at 95, 475 A.2d at 1050).  The Delisle court acknowledged that the second and third factors both relate to the

20

prejudice caused by the loss of evidence.  Id. at 95, 475 A.2d at 643.  After applying Bailey the test in the Delisle case, the Court concluded that the lost evidence did not result in a denial of the defendant's right under the Vermont Constitution to call for evidence in his favor.  The Court noted that there was no proof of bad faith, but its analysis turned primarily on the absence of unfair prejudice.

¶ 47.    After its discussion of the lost evidence issue, the Court turned to the defendant's challenge based on the State's pre-indictment delay.  The Court cited the U.S. Supreme Court's guidance that due process prevents prosecution where a delay "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency." Id. at 312, 648 A.2d at 644 (quotations omitted).  Then it explained, "[i]n making this inquiry, courts should consider the reasons for the delay and the actual prejudice to the defendant." Id.

¶ 48.    Noting first that the defendant did not contest the State's explanation that the delay was an investigatory one resulting from a lack of evidence, the Court considered and rejected each of the defendant's claims of actual prejudice.  In its conclusion, the Court noted that prosecuting a defendant following an investigative delay does not deprive the defendant of due process even if the defense may have been somewhat prejudiced by the lapse of time, and emphasized that the defendant had failed to show any actual prejudice. Id. at 313, 648 A.2d at 644.

¶ 49.    Delisle offers no support for the majority's position, and actually offers support for a contrary view.  Nothing in the Court's analysis in Delisle suggests a view that pre-indictment delay runs afoul of due process only if it results from the State's bad faith or impermissible motives.  Delisle considered both the reason for the delay and the degree of prejudice—both factors to be considered under any potential test.  But the Court said nothing to suggest that a claim based on prosecutorial negligence could not make out a due process violation under the Vermont Constitution.  In fact, the Court acknowledged at the outset of its analysis that the defendant did

21

not even challenge the State's innocent explanation for the delay. Yet it went on to evaluate the prejudice claimed by the defendant. Had the Court endorsed the view now embraced by the majority, it would not have undertaken that second step. Moreover, the Delisle Court recognized that the negligent loss of evidence may critically prejudice a defendant every bit as much as a bad faith loss of evidence. Id. at 310, 648 A.2d at 643.

¶ 50. The Delisle Court's recognition that the constitutionally cognizable consequences of lost evidence may depend on more than just the purity of the State's motivations makes sense. If we were barring an untimely prosecution solely as a sanction for prosecutorial misconduct, or in order to deter future misconduct, the singular focus on the permissibility of the State's purposes would be justified. But the core question for due process purposes is whether a delay violates "fundamental conceptions of justice" and "the community's sense of fair play." Id. at 312, 648 A.2d at 644 (citations omitted). Although it may be an unusual case, there are likely circumstances in which a negligent and extraordinary delay that causes extreme prejudice violates those fundamental conceptions of justice and fair play. The majority's more sweeping approach denies that possibility.

¶ 51. For these reasons, I would evaluate the defendant's claim pursuant to the standard set forth in Knickerbocker. In that case, the New Hampshire Supreme Court considered an indictment for second-degree murder of an infant that had occurred twenty years prior. On appeal from the trial court's dismissal of the indictment, the New Hampshire Supreme Court considered whether a defendant making a due process claim on the basis of excessive preindictment delay must prove under the New Hampshire Constitution that the State's delay resulted from a deliberate device to gain an advantage. Knickerbocker, 880 A.2d at 421-22. The court first explored the split in federal appeals court decisions evaluating due process claims under the U.S. Constitution, acknowledging that a majority of the federal circuits require a showing of prosecutorial misconduct or some other impermissible purpose in order to establish a due process violation. Knickerbocker,

880 A.2d at 422. However, the court concluded that this majority view was not compelled by the U.S. Supreme Court decision on which it purported to rest, and that the unsettled federal precedent did not provide a sound basis for reexamining the State's own constitutional test. Id. at 422-23. Instead, considering a state constitutional provision almost identical to Ch. 1, Article 4 of the Vermont Constitution,[4] the court reaffirmed the following test for pre-indictment delay: "The defendant must initially show that actual prejudice has resulted from a delay. Once such a showing has been made, the trial court must then balance the resulting prejudice against the reasonableness of the delay." Id. at 423 (quotation omitted).

¶ 52.    The Knickerbocker court emphasized that the bar for establishing actual prejudice is a high one. The defendant must show "actual prejudice that is definite and not speculative." Id. at 423 (quotation omitted). A showing of possible trial prejudice is not enough, and the prejudice must be substantial. Id. "[T]he possibility of prejudice due to the dimming of memories is inherent in any delay and, alone, is insufficient to constitute a denial of due process." Id. (quotation omitted). And when the claimed prejudice arises from the unavailability of a witness, the defendant must demonstrate with specificity the expected content of the testimony, that the

---

[4]  Part 1, Article 14 of the New Hampshire Constitution reads:

> Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws.

Chapter I, Article 4 of the Vermont Constitution states:

> Every Person within this state ought to have a certain remedy, by having recourse to the laws, for all injuries or wrongs which one may receive in person, property or character; every person ought to obtain right and justice, freely, and without being obliged to purchase it; completely and without any denial; promptly and without delay; conformably to the laws.

23

information the witness would have provided was not available from other sources, and that the defendant made serious attempts to find the witness. Id. The court noted that a dismissal on the basis of undue delay prior to trial will rarely be appropriate since an assessment of actual substantial trial prejudice can be more accurately made after the trial. Id. at 424. In Knickerbocker, the court applied this stringent approach, reversing the trial court's various findings of prejudice and concluding that the defendant had failed to establish actual prejudice due to his delayed indictment.

¶ 53.    In contrast to the majority's approach, the Knickerbocker test focuses the inquiry first and foremost on the subject of greatest constitutional concern: the prejudice to the defendant as a result of the State's action (or inaction). In the absence of actual and substantial prejudice, a defendant has no grounds to complain of a delayed prosecution within the applicable statute of limitations. But if the defendant makes the difficult showing of actual, non speculative, and substantial prejudice as a result of inordinate delay, then this approach contemplates that negligent delays—as opposed to perfectly reasonable investigative delays—could in some cases cause so much harm to an accused as to violate fundamental notions of fairness.

¶ 54.    That is not the case here. Applying the stringent Knickerbocker test, I would reach the same result as the majority—not because the defendant failed to show an impermissible prosecutorial purpose, but because he failed to show substantial actual prejudice.

_____

Associate Justice

24